**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.                                                      Case No. 6:15-cr-170-Orl-37GJK-2

SHANNAN LEE WINEMILLER.

---

## ORDER

This cause is before the Court on the following:

1.    Defendant's Motion for Judgment of Acquittal Notwithstanding the Jury

      Verdict and Renewal of Previous Motions (Doc. 124), filed November 20,

      2015; and

2.    Government's Response to Defendant's Motion for Judgment of Acquittal

      (Doc. 126), filed November 25, 2015.

Upon consideration, the Court finds that the Motion is due to be denied.

## BACKGROUND

On September 23, 2015, the Government returned a Superseding Indictment in

open court, which charged Shannan Lee Winemiller ("**Winemiller**") and Ronaldo

Espinoza ("**Espinoza**") (collectively, "**Defendants**") with two counts of knowingly aiming

the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United

States—and at the flight path of such aircraft—in violation of 18 U.S.C. § 39A.[1]

---

[1] The Government charged each Defendant on the alternative theories of:
(1) knowingly violating 18 U.S.C. § 39A; and (2) aiding and abetting the other in
knowingly violating 18 U.S.C. § 39A, pursuant to 18 U.S.C. § 2. (*See* Doc. 71.)

(Doc. 71.) Count I charged Defendants with knowingly aiming a laser beam at a Southwest Airlines Boeing 737 aircraft ("**Southwest Aircraft**")—or at the flight path of the Southwest Aircraft—on or about July 6, 2015, and Count II charged Defendants with knowingly aiming a laser beam at an Orange County Sheriff's Office helicopter ("**Police Helicopter**")—or at the flight path of the Police Helicopter—on or about July 7, 2015 (collectively, "**July 2015 Incident**"). (*Id.*) At a joint arraignment, Defendants each pled not guilty to both charges. (Doc. 74.) The case was subsequently transferred to the Undersigned (Docs. 81, 82), who severed the Defendants for trial (Doc. 99). Winemiller's jury trial commenced on November 17, 2015 ("**Trial**"). (*See* Doc. 107.)

At the Trial, the Government presented evidence establishing the following facts.[2] Shortly after 11:00 p.m. on July 6, 2015, the Southwest Aircraft was approaching the Orlando International Airport ("**Airport**"). At this time, a green laser beam struck the left-hand side of the Southwest Aircraft cockpit twice. Tom Kraushaar, the captain on board the Southwest Aircraft ("**Captain Kraushaar**"), estimated that the laser beam originated from south of the expressway that runs along the Orlando Executive Airport ("**OEA**")—later identified as State Road 408—and immediately reported the laser strikes to the Airport traffic control tower, who notified the Orange County Sheriff's Office ("**OCSO**"). In response, the OSCO dispatched the Police Helicopter to the area above the OEA to determine the source of the reported laser strikes. Pilot Patrick Deans and tactical flight observer Deputy Jason Sams ("**Deputy Sams**") were on board the Police Helicopter that evening. Shortly after midnight on July 7, 2015, a green laser beam

---

[2] The Government's case-in-chief included testimony from five witnesses, numerous exhibits, and two stipulations of fact regarding: (1) the air traffic control report of the Southwest Aircraft laser strike (Doc. 67); and (2) the chain of custody of the laser pointers retrieved during Defendants' arrest on July 7, 2015 (Doc. 68). Winemiller did not present any of his own witnesses at Trial.

struck the left-hand side of the Police Helicopter cockpit. Deputy Sams immediately looked toward the laser and followed the beam straight to the ground. He deduced that the laser beam had come from the backside of a Winn Dixie shopping center located on State Road 436 and Stonewall Jackson ("**Source Location**")—southeast of the OEA. Upon activating the infrared mode on the Police Helicopter's camera ("**Camera**"), Deputy Sams directed the Camera toward the Source Location, where he observed only two individuals ("**Suspects**"). Deputy Sams then radioed police ground control and requested that any available units in the area make contact with the Suspects.

Sergeant Miguel Vazquez ("**Sergeant Vazquez**") was the first to respond to the request. Deputy Sams was able to see the events on the ground through the Camera and used the police radio to direct Sergeant Vazquez to the Source Location. Upon his arrival, Sergeant Vazquez observed only two individuals in the area, situated by chairs. Deputy Sams confirmed by radio that these individuals were the Suspects he had previously observed on the Camera.

On the ground, Sergeant Vazquez made contact with the Suspects and directed them toward his patrol car. The Suspects identified themselves as Winemiller and Espinoza. During a pat down of Espinoza, Sergeant Vazquez retrieved a handheld laser from Espinoza's pocket. Vazquez then walked over to the chairs where he first observed Defendants and found a second, identical laser. Sergeant Vazquez tested each laser (collectively, "**the Lasers**") by aiming the beams at the ground; the Lasers each emitted a green light.

Sergeant Vazquez then interviewed each Defendant in turn. Winemiller waived his Miranda rights. He admitted that Espinoza gave him a laser pointer as a gift earlier that day. Winemiller also admitted that he and Espinoza had been playing with the

Lasers and pointing them at aircraft, and that Winemiller felt his beam was "stronger or better" than Espinoza's. Additionally, Winemiller told Sergeant Vazquez that he aimed his laser at a total of three or four aircraft that evening, one of which Winemiller described as a helicopter. Defendants were subsequently taken into police custody.

At the close of the Government's case, Winemiller moved for a judgment of acquittal, which the Court denied from the bench. (*Id.*) The jury found Winemiller guilty of both counts of the Superseding Indictment. (Doc. 114.)

Winemiller now renews his motion for judgment of acquittal. (Doc. 124.) The Government opposes (Doc. 126), and the matter is ripe for the Court's adjudication.

## STANDARDS

Federal Rule of Criminal Procedure 29(a) provides that the Court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The test is whether, viewing the evidence and inferences drawn therefrom in the light most favorable to the Government, substantial evidence exists to support the verdict. *United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir. 1982). The Court need only find that a reasonable juror could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). The Court is "bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant." *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005).

## DISCUSSION

Winemiller contends that, based on the evidence presented at trial, no reasonable jury could have found him guilty of Counts I and II. (Doc. 124, ¶¶ 4, 13, 14.) For the following reasons, the Court disagrees.

## I.     Count I

As to Count I, Winemiller argues that the Government's evidence failed to: (1) establish that either Defendant actually hit the Southwest Aircraft with the Lasers; and (2) exclude the possibility that an unknown individual aimed a laser at the Southwest Aircraft. (*Id.* ¶¶ 6, 11.)

As an initial matter, the Court's jury instructions as to Count I did not require the jury to find that Winemiller or Espinoza actually hit the Southwest Aircraft; rather, the instructions only required the jury to find that Winemiller "knowingly aimed the beam of a laser pointer at an aircraft, *or at the flight path of such aircraft*," or that Winemiller aided and abetted Espinoza in doing so. (*See* Doc. 113, pp. 6–8 (emphasis added).)

The Government presented substantial circumstantial evidence at trial from which the jury could conclude that it was either Winemiller or Espinoza—and not some other unidentified individual—who aimed the beam of a laser pointer at the Southwest Aircraft, or at the flight path of the Southwest Aircraft. First, the Government introduced Winemiller's admissions that he and Espinoza were playing competitively with the Lasers on the evening of July 6, 2015, and that they pointed the Lasers at multiple aircraft. Second, both Southwest Aircraft pilots testified that their cockpit was struck by a green laser beam twice that evening. Third, Sergeant Vazquez testified that he found the Defendants with two lasers that had green beams—approximately one hour after the Southwest Aircraft was struck twice by a green laser beam—in the same approximate area in which Captain Kraushaar estimated that the source of the laser beam originated. Finally, Bill Moore testified that the July 2015 Incident was the first time in his seven years as a Southwest pilot that he ever experienced a laser strike.

The witnesses' testimony was internally consistent, and the jury clearly found the

witnesses to be credible. Based on this evidence, which the Court views in the light most favorable to the Government, a reasonable juror could conclude that Winemiller was guilty of Count I beyond a reasonable doubt. Therefore, Winemiller's Motion as to Count I is due to be denied.

## II.    Count II

With respect to Count II, Winemiller argues that the Government did not establish that Espinoza and Winemiller were aiding and abetting each other in aiming a laser pointer at the Police Helicopter. (Doc. 124, ¶ 14.) In spite of Winemiller's admission regarding the competitive nature in which he and Espinoza were playing with the Lasers and pointing them at aircraft, Winemiller poses the following rhetorical question to the Court—"[d]oes the losing team in a sporting event aid and [abet] the winning team?" (*See id.*) Winemiller's argument—and question—is not well taken.

A defendant can be found guilty under a theory of aiding and abetting for "procuring someone else to commit the offense." *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984). Therefore, the Court agrees with the Government's position that "[r]egardless of who won the game, [Defendants] were inducing each other to violate the statute." (Doc. 126, p. 9.) Construing the evidence in the light most favorable to the Government, a reasonable juror could find Winemiller guilty of Count II beyond a reasonable doubt on a theory of aiding and abetting. The Court, therefore, finds Defendant's argument as to Count II to be without merit.

Even if the Court were persuaded by Winemiller's argument, it would not warrant a judgment of acquittal. The Government presented the jury with alternative theories of liability upon which they could convict Winemiller of violating 18 U.S.C. § 39A. Aside from aiding and abetting Espinoza, Winemiller could be found guilty for: (1) knowingly

aiming his laser directly at the Police Helicopter; or (2) knowingly aiming his laser at the flight path of the Police Helicopter. Winemiller admitted that he and Espinoza pointed the Lasers directly at several aircraft, one of which he identified as a helicopter. This admission, taken together with the witness testimony and exhibits admitted at trial, provides substantial circumstantial evidence upon which a reasonable juror could conclude beyond a reasonable doubt that Winemiller either directly aimed a laser pointer at the Police Helicopter or aimed a laser pointer at the flight path of the Police Helicopter. As such, Winemiller's Motion as to Count II is also due to be denied on the merits.[3]

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.     Defendant's Motion for Judgment of Acquittal Notwithstanding the Jury Verdict and Renewal of Previous Motions (Doc. 124) is **DENIED**.

2.     The Court will proceed with Defendant Shannan Lee Winemiller's sentencing on Monday, **February 1, 2016**, at 11:00 a.m.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 29, 2016.



ROY B. DALTON JR.
United States District Judge

---

[3] Winemiller also moves to renew a laundry list of motions on which the Court has already ruled. (*See* Doc. 124, ¶ 16.) Absent any supporting argument or authority, the Court declines to reconsider its prior rulings.

Copies:

Counsel of Record